IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMIE N.,[1] | ) |
| | ) |
|               **Plaintiff,** | ) |
| | )    **CIVIL ACTION** |
| v. | ) |
| | )    No. 20-1164-JWL |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|               **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding error in the Administrative Law Judge's (ALJ) evaluation of the alleged symptoms resulting from Plaintiff's irritable bowel syndrome, status post anal surgery, and gastritis, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent with this decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed an application for DIB on March 14, 2018. (R. 11, 533-36). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating her reported gastrointestinal symptoms.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

**II.    Discussion**

Plaintiff claims the ALJ erred in evaluating her gastrointestinal symptoms because he failed to provide "a sufficient explanation for why [her] specific allegations of limitations related to gastrointestinal impairments are not supported by the record and included in the RFC." (Pl. Br. 18-19). She argues, "The ALJ's statements that [her] general allegations are not supported by the record are insufficient to satisfy the articulation requirements." Id. at 20 (citing Soc. Sec. Ruling [SSR] 16-3p (an ALJ's decision must be "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). She argues that even if the articulation requirements were met, "the ALJ still erred by failing to point to inconsistencies between [her] allegations and the record." Id. at 22. Finally, she argues

4

the ALJ "failed to identify examination findings inconsistent with [her] allegations." (Pl. Br. 23).

The Commissioner argues the ALJ found Plaintiff's allegations of disabling limitations are not supported by the record evidence, his finding is supported by substantial evidence, and the court should not overturn such a determination. (Comm'r Br. 7). He explains how, in his view, the evidence supports the ALJ's determination. Id. at 8-16. In her Reply Brief, Plaintiff argues that because the ALJ did not assess RFC limitations related to her gastrointestinal impairments, his "decision leaves the reader guessing as to how he considered limitations related to gastrointestinal impairments." (Reply 2). She reiterates that although the ALJ generally acknowledged her allegations, summarized her treatment, and provided general statements regarding inconsistencies between her allegations and the record, "he did not specifically address what evidence supports or detracts from her allegations of limitations related to gastrointestinal impairments." Id.

### A.     Standard for Evaluating Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We

>must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

>the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on June 26, 2019, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3) (i-vii).

> SSR 16-3p provides that the agency
>
> will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions. We will evaluate an individual's symptoms considering all the evidence in his or her record.

2016 WL 1119029, at *8. It explains that the ALJ's

> decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

Id. at *9.

### B.     The ALJ's Findings

In his step two analysis the ALJ noted Plaintiff's severe impairments include her gastrointestinal impairments; irritable bowel syndrome, status post anal surgery, and gastritis. (R. 13). He stated he had considered all Plaintiff's symptoms in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p. Id. at 17. He explained the standard applicable to evaluating allegations of symptoms and noted Plaintiff alleged symptoms including multiple bowel movements on a daily basis, problems with food digestion, gastric bleeding despite surgery in November 2018, and occasional incontinence. Id. He

7

found Plaintiff's allegations "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 18). He found the medical records concerning "irritable bowel syndrome (IBS), status post anal surgery, [and] gastritis, … do not show these impairments to be as functionally limiting as has been alleged." Id.

He then provided an extensive summary of the medical records regarding Plaintiff's gastrointestinal impairments:

> Objective medical evidence shows that the claimant has IBS, status post anal surgery, and gastritis. Remote records document gastritis among the claimant's past medical history (1F). She was admitted to Wesley Woodlawn Medical Center (WWMC) on July 12, 2016 due to complaints of abdominal pain and gastrointestinal bleeding. She was treated and discharged the next day with medication. Mark Bowles, M.D. concluded that erosive gastritis and IBS were potential causes of the claimant's symptomology (26F).
>
> On May 7, 2017, the claimant presented to WWMC with complaints of abdominal pain and rectal bleeding that had occurred intermittently throughout the past year. A CT scan of the pelvis showed no evidence of bowel obstruction, ascites, or inflammatory bowel changes, and no acute abnormality in the abdomen or pelvis (27F).
>
> The claimant received regular treatment at Galichia Medical Group (GMG) beginning January 30, 2018, for complaints related to nausea, vomiting, diarrhea, abdominal pain, rectal pain, bleeding with bowel movements, and/or loose stools (6F, 12F, 14F, 25F, 32F).
>
> She presented to the emergency department at NMC on February 25, 2018, with reports of nausea, vomiting, an inability to keep food down, and diarrhea. She was treated and discharged in improved condition (3F).
>
> An upper GI endoscopy was performed on February 26, 2018, which revealed chronic gastritis. The claimant underwent a colonoscopy on February 26, 2018, and on August 27, 2018, which revealed that the entire examined colon was normal, but also depicted IBS (4F, 29F). A small

8

> bowel capsule endoscopy was performed on May 14, 2018, which showed punctate erythema in the stomach consistent with a mild diffuse gastritis (13F, 16F).
>
> The claimant complained of rectal pain and bloody stool at a visit to WWMC on October 29, 2018 (27F). On November 7, 2018, the claimant underwent a digital rectal examination under anesthesia with hemorrhoidectomy, fissurectomy, and chemical internal sphincterotomy using Botox (28F). At a visit to Wichita Surgical Specialists on November 27, 2018, the claimant reported pain with bowel movements, but noted that her symptoms had improved (34F). The claimant reported no incontinence at a visit to Kansas Physician Group on November 27, 2018 (32F).
>
> On February 18, 2019, the claimant presented to WWMC with complaints of abdominal pain, bloody/tarry stool, and diarrhea. She was assessed with an upper gastrointestinal bleed, given Pepcid for the bleeding and Carafate for gastritis, and released in stable condition with stable hemoglobin on February 21, 2019 (30F, 31F).
>
> The claimant visited Kansas Physician Group on February 27, 2019, for a follow-up after her hospital visit. The claimant reported feeling better, denied blood in her stool, and said that her abdominal pain had gone since her fissurectomy surgery (32F).

(R. 19-20).

The ALJ found these medical records "and the claimant's own statements at medical visits regarding the efficacy of treatment are inconsistent with the claimant's testimony and statements that she cannot work due to disabling … IBS, status post anal surgery, [and] gastritis." Id. at 21. He concluded that "she is limited to work at the sedentary exertional level with additional exceptions." Id.

### C.     Analysis

The Commissioner's argument the evidence supports the ALJ's finding Plaintiff's allegations of disabling limitations are not supported by the record evidence is based upon the ALJ's findings and discussion cited above. The Commissioner's argument is

9

that the limitations alleged by Plaintiff are not disabling because they are not as functionally limiting as Plaintiff alleges, and that argument is based upon the evidence cited by the ALJ.  However, the Commissioner does not explain how the limitations alleged by Plaintiff and recognized by the ALJ— multiple bowel movements on a daily basis, problems with food digestion, gastric bleeding despite surgery in November 2018, and occasional incontinence (R. 17)—are not so functionally limiting as to be disabling.  Moreover, the ALJ did not do so either.

    While the allegations may be susceptible of an understanding inconsistent with disabling limitations, that understanding is not obvious on the face of the allegations and, at the least, requires a statement of the ALJ's understanding of the limitations alleged to resolve any ambiguity.  "Problems" with food digestion might properly be assumed to impose a non-disabling limitation, but the other allegations may well impose disabling limitations.  Plaintiff's report of between five and ten bowel movements on a daily basis (R. 313) was made after the period at issue before the ALJ and is therefore not chronologically relevant here.  Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir.1991).  See also Henderson v. Dept. of Health and Human Servs., No. 93-6264, 1994 WL 18076, at *1-2 (10th Cir. Jan. 24, 1994).  Nonetheless, multiple bowel movements on a daily basis will not necessarily fit within the allowance for normal breaks approximately every two hours.

    Likewise, occasional incontinence may, or may not, result in disabling limitations, depending on the frequency and/or the severity of the incontinence, and whether it is bowel or urinary incontinence.  Finally, and perhaps most importantly, gastric bleeding

may or may not result in disabling functional limitations depending on its severity and its frequency.

While these ambiguities are clearly the result of Plaintiff's imprecise allegations, it is the ALJ's responsibility to resolve ambiguities and material inconsistencies in the evidence. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2020). Moreover, it is the Commissioner's own ruling which requires an explanation of "which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions." SSR 16-3p, West's Soc. Sec. Reporting Serv., Rulings 672 (Supp. 2020). Because these allegations are, on their face, neither disabling nor inconsistent with the record evidence it was incumbent on the ALJ to explain precisely why they do not impose disabling limitations, or how they are inconsistent with the record evidence. He did not do so, and remand is necessary for a proper explanation.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

Dated June 16, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**